Case No. 18-7010. In re. Rail Freight Fuel Surcharge Antitrust Litigation. MDL No. 1869 Dakota Granite Company, on behalf of itself and all others similarly situated at L. Appellants vs. BNSF Railway Company at L. Ms. Sullivan for the appellants, Mr. Phillips for the accolades. Ms. Sullivan, before we start I just want to ask counsel from both sides, some of the material is listed as sealed, I assume for commercial reasons, some is not, very difficult for us to tell which is and which isn't. We intend to ask you questions. If for some reason this requires a sealed answer, somebody needs to say that. If no one says that, we're going to assume either that it's not sealed or that both sides are agreeing to unseal it. And also to be clear, it would be highly unlikely for us to agree that any of the material we're going to discuss today would remain sealed. So keep that as sort of a threshold before you jump up and claim it's sealed. Is that fair with everyone?  Good morning, Your Honors, and may it please the Court. Kathleen Sullivan of the Quinn Emanuel Firm, along with Michael Hausfeld of the Hausfeld Firm, here on behalf of the plaintiff class of businesses who ship freight by rail. The sole question before the Court today is whether the plaintiff class has met the requirements of Rule 23b-3 that common issues predominate over individual ones. And on the record here, we amply meet that requirement. We have common evidence from the mouths… …to bring your case under. Because you either have to show manifest error or you have to show an unsettled question plus debating end of case review. We actually think all three prongs are triggered here. We think that it would be the death knell for most of the class if only the named plaintiffs were allowed to proceed on an individual basis because very few of the shippers in this case have a claim sufficient to warrant the prosecution of individual lawsuits. Second, we think there is manifest error, and I want to devote most of my argument to the legal error here. We're not here on clear error. We're here on legal error, the application of the wrong standard under 23b-3. Right, but manifest error, I mean, that's how you argued it in your 23F papers. That's right, Your Honor. That's a much heavier lift for you than simply showing error. We've said there's never been a case where we've found manifest error for 23F purposes. Your Honor, we actually think this is the case. There is an unprecedented legal ruling in this case that 23b-3 imposes a second, separate, super reliability screen on expert evidence. That has never been held in any other case. It's manifestly erroneous. It was not dictated by this panel's prior opinion, which nowhere instructed the district court on remand to look to the persuasiveness of the expert evidence. So we do think we meet that test, but Your Honor, if you have any doubt. Right, but if I think it's a close case and maybe you haven't met that burden, I think you have a stronger case on unsettling, so just give me 30 seconds on why this issue might evade end of case review. Yes, Your Honor. So if the class is decertified, it will not be possible for the named plaintiffs necessarily or any individual plaintiffs who bring individual suits to restore the status quo ante of decertification. You go to final judgment and then you appeal the denial of class certification. Yes, so Your Honor, here's why we think you should resolve it now. We think that it is a very important issue of class action jurisprudence. The misinterpretation of the court's prior opinion by the district court below this court's prior opinion may wreak considerable havoc in the meantime on other class actions if the persuasiveness standard is picked up, and therefore it's an important question affecting class action jurisprudence. I agree with you, but our cases seem to say you need something more. Yes, so Your Honor, we think that it will be difficult to unwind if individual cases are prosecuted what would have or would not have been shown by class-wide proof, and that record problem in review after final judgment in an individual case should lead you to retain your 23F jurisdiction here. If I may turn to the merits, Your Honor, and Chief Judge Garland, I can tell already that we may run out of some time here, and if I hit the red light, I'll ask your permission to go further than 10 minutes. So the practice in the court is the red light governs you, but not the bench, so if we have further questions, we will ask further questions, and you could be here all day, but if nobody has any questions, then we'll end. Thank you, Your Honor. If I may just return to what I think is the core legal error here, this was a case in which we presented voluminous common evidence that the Big Four railroads engaged during the class period in an effort to impose rate-based fuel surcharges industry-wide without exception, and that effort was successful. So help me understand exactly what the district court is supposed to do when it rigorously examines. You cite, and of course Tyson proved, references a summary judgment standard. Walmart talks about proving your case twice, both at certification and then again at trial. What I'm trying to understand in my own mind is, is the district court making a finding that the plaintiffs would not be entitled to judgment as a matter of law with this evidence, expert evidence of the issue and the non-expert evidence, or is it deciding that no reasonable juror could be persuaded by this evidence? Or is it sort of backing up and making what I'll call sort of a technical argument that you have a reliable mechanism in the sense that there are recognized ways to measure something, but you simply don't have the evidence to produce the result you need? Well, Judge Rogers, in answer to that question, we think that what the district court should have done is assess the defendant's admissions by the ordinary evidentiary standards and the expert evidence by the ordinary evidentiary standards. That's step one. Look at everything for admissibility under federal rules of evidence 401, 403, 702, and Daubert. And then, and then, Your Honor, this is the key, there is another step involved in 23b3. But it is not the step the district court took. It is not for the district court itself to make an assessment of the persuasiveness of the expert report on the merits. So I would revert, Your Honor, to the uniform language of the cases, which is, is the common evidence, lay evidence, and expert evidence together capable of or susceptible to class-wide proof? It's different from the summary judgment standard because when we get to the summary judgment standard, and my friends on the other side may want to get there with most of their arguments, those are merits arguments. And it's not a Rule 50 argument. Correct, Your Honor. The argument is capable or susceptible of class-wide proof. So the best way I can put it is the rigorous analysis under 23b3 is to determine whether there's commonality, whether the evidence can be shown through class-wide proof. And here we had two forms of class-wide proof. And I think it's very important to focus on what I think is the manifest error here. The district court pulled the expert evidence out of the pile of evidence as a whole. And he said, I'm going to subject the expert report to a second separate reliability screen. I'm letting it in under Daubert. He did a Daubert analysis. He said it's reliable, admissible, relevant, methodologically sound, but I'm going to subject it to a second separate reliability screen. And that's the manifest legal error right there. One point that seems pretty clear from both Walmart and Comcast is there's a Rule 23 inquiry for rigorous analysis. There's a Rule 702 inquiry for admissibility. And there are merits inquiries where the district court screens for evidentiary sufficiency. They are all different, and there is no problem with overlap, either overlap of the Rule 23 inquiry with the admissibility inquiry or with the merits inquiry. Well, I slightly disagree, Your Honor. I would say there's no problem with overlap between the Rule 23b3 inquiry and the admissibility inquiry. Here we think once there was admissibility, that was the end for the expert evidence, and the expert evidence then should have been viewed under 23b3 under a capable of common proof test, not a persuasiveness test. And, Judge Rogers, I want to be clear in answering your question. We should never have gotten here to the question of Rule 50 sufficiency or a summary judgment standard. That's for later. And that was the key error here. And I want to be very clear, and I want to give you pinpoint sites, not misstating what the district court did. The district court said there are two separate reliability screens, the Daubert screen and then a separate 23b3 reliability screen for the expert evidence. And he announces that standard at A2858-59 and A2946. And then just because I don't want you to think I'm mischaracterizing it, he uses the word persuasive over and over and over again when he does the analysis. Can you apply this to the actual findings in the case? Yes, Your Honor. And that will make it a little easier for me to understand the various different things. So the judge finds, and I think your expert agrees, that there are about 2,000 shippers for whom the model, the regression model, doesn't show antitrust injury. Is that right? Just the model itself, leave aside the documentary evidence. Slight disagreement, Your Honor. The model shows 2,000 shippers with negative damages. It's our position that that does not show them to be uninjured, as defendant's own expert conceded. Hold on a second. The model itself does not show that they were injured, right? Correct. It just shows negative for 2,000, right? Now that evaluation, you don't have any problem with the judge making that, you know, pointing to that statement by the expert, right? Well, we have a problem with it, Your Honor, because we think that the common evidence, including the non-expert evidence, shows injury. That's why I'm trying to take this in little pieces. Understood, Your Honor. Just that, just the regression model, it doesn't show injury by itself. The model by itself doesn't show antitrust injury to 2,000 shippers, correct? Correct. Okay. What is the other evidence? And you agree that there has to be evidence which shows injury to those 2,000, right? A common evidence. No, we think there has to be common evidence that could, at trial, be capable of showing injury to all those persons. We don't have to prove it now. Okay. Well, if the expert just says, theoretically, and I'm not going to tell you how, I have some evidence in my back pocket that would show this, that wouldn't be enough, would it? To show injury? Yeah. If that were all there was, no, but you have to take it together with the other evidence, the non-expert evidence. I'm only talking about the non-expert evidence now. If the expert says, I believe, would that be sufficient to show? If that were the only evidence in the case? So what I want to know is, what is the documentary evidence that shows, the common documentary evidence that shows all 2,000 were subject to antitrust injury? What is that evidence? So there's two sources, Your Honor. There's common non-expert evidence that the imposition of overcharging fuel surcharges in the class period was applied ubiquitously, in the words of this, the prior panel in this case, and enforced without exception. And the district court agreed with us on that finding about the common evidence. Was there evidence that, assuming that was all correct, that that would raise the price above the competitive price? Not just that there were fuel surcharges, not just that it raised the price, but common evidence that it raised it above the competitive price? Yes, Your Honor. And what was that? Number one is the general evidence that the uniform enforcement made it impossible to discount. And in the pre-class period, there was either theoretical fuel surcharges because the trigger wasn't reached, or there was widespread practice of waiver or programmatic reduction. So you have a pre-class period in which bargaining, pushback, and competitive pressure is possible. In the post-class period, all that disappears. And so the common non-expert evidence shows that uniform enforcement would extend the overcharges to everyone in the class. Second, Your Honor, there's expert evidence supporting our view that the 2,000 were injured. The district court conspicuously failed to look at Dr. McClave's testimony, our second of our three experts. Mr. McClave showed that there was, in fact, a pattern of overcharges to those 2,000. That is, to refer Your Honor to the exact space where you can see it in the sealed portion of the record, it's A6403 to 6404. In the district court, there's a lacuna in the district court's opinion. He does not address that aspect of McClave's report. So what was the reason, let me just back you up for a minute, we'll get back to this. What was the reason for Raoul Sear's regression analysis? Why did he bother with that in the first place? Your Honor, the regression analysis was designed to isolate causation and show damages. It had two purposes. The purpose of the regression analysis was to show here are the common factors that normally dictate freight rates in a competitive market. Weight, commodity, to and from, origins, interlines. These are the common factors. And to take those out of the analysis. Take those out of it, and you'll show the conspiracy accounts causally for the antitrust interest. In either the uniform evidence of the inability to discount or in McClave's evidence of a pattern of overcharges, was there anything that took out the common factors in the same way the regression model did for all the other shows? Well, Your Honor, we think that Raoul Sear's model does prove that the overcharges were applied class-wide as a result of the uniform enforcement in the class period, and that the 2,000 come from statistical noise. This is the key point. Certainly this court does not want to rule that you can't use regression analysis anymore in large class actions because it leads to prediction error and statistical noise. I don't think the question is whether you can use it or not. The question is, what do you do for the ones that it doesn't give you a prediction? Here's what you do, Your Honor, and here I go back to my discussion with Judge Rogers. You take this dispute about the weight of the expert evidence in light of the common evidence to summary judgment or to trial, and you have the debate there. Dr. Kalt, the defendant's expert, admitted that negative damages doesn't mean injury. Negative damages doesn't mean injury. That admission bolsters our account that it was just statistical noise or prediction error. That battle of the experts as to the weight of the common evidence is not a matter for class certification. It's a matter for summary judgment or for trial, and that was the key error here. For District Court 5, he says the problem with the plaintiff's argument is that there is no evidence in the record to support the notion that intermodal shippers receive massive discounts or waivers from the public intermodal formula. That's at A3007. Yes, Your Honor. So the question there is, one, you're saying that's erroneous as a matter of fact of what was in the record, but also that it's imposing a finding that is nowhere required at the certification point? Yes, Your Honor. Let me start with the second one first. The reason why the district court gets to that finding, and we're shifting now from the 2,000 small shippers who had negative damages. That was one of the flaws. Now if we shift to the intermodal flaw, another new thing since the last panel. Your Honor, there's two answers there. First, the judge was applying the wrong legal standard there, and that's going to be my core argument to you. A persuasiveness second screen for the expert evidence is legal error. It's not required or permitted by Rule 53b3. It violates the Rules Enabling Act because it imposes a second screen on class-wide evidence that wouldn't have a second screen in an individual case. So hypothetically, if you had an expert where the judge had ruled that the evidence was admissible under 702, it was a proper model under Daubert. But in fact, for this model, you needed evidence A, B, and C. And all he could find in the record was A and B. There was no C. Now, is that a proper finding at certification, or is that something for the defense to point out at trial? So, Your Honor, it depends on what C was. And let me try to—I'm not trying to—I mean, I think what the judge is allowed to do in the 23b3 screen is say, is the expert model falsified because the commonality is unsupported? He's not allowed to say the statistical validity is unsupported. That's a weight question for summary judgment or trial. Let me give you a counterfactual. Suppose here that the defendants had—which they did not—had come forward and said, look, in the class period, everything is bilaterally negotiated to a price, and we never start—we never start from the conspiratorial rates. Rates begin all over the map. In that world, if C were missing, what C might have been missing in that case was proof that there was a common or uniform policy. Here we're like the anti-Walmart. You know, Walmart, there was no common policy. Here we have a common uniform policy. Apply the fuel surcharges without exception, industry-wide, across the board, no waivers, no discounts. Make sure there's no competitive pressure. That common policy. If what was missing from the expert model was a way to account for bilateral negotiations, then the district court would be permitted under 23b-3 to say, sorry, no commonality, not capable of purely class-wide proof under 23b-3. But this is not that case. And don't take it from me. Take it from the district court. The district court held in the first decision certifying—and this is at 287 federal rules decisions at 51— that what changed in the class period is no more negotiability. No more negotiability. And no more negotiability means you can't—the uniform policy couldn't be disturbed through bilateral negotiations. So—and by the way, the district court at A-2969 says the documentary evidence hasn't changed. So that finding— Is the lack of negotiability alone enough? If that were the case, Rausser wouldn't have had to have done our regression model at all. Well, correct, Your Honor. Well, no, his regression model is designed also to show damages. I didn't get to that part. It is to show the overcharges. Yes, but that's not the only reason it was presented. Correct. It was presented to show antitrust injury. That's right, Your Honor. Look, we actually think it might be an open question whether we needed an expert model at all, given the lay evidence. It was so overwhelming. If you don't think the lay evidence is— negotiate by itself indicates antitrust injury? That's—I guess that's the question. Doesn't it depend on all the other factors like actual fuel price, like other outside economic factors? Yes, Your Honor. Look, we think that together we had common evidence of antitrust injury, both from the fact of non-negotiability, which helps support and explain Rausser's model. And, you know, it may be law of the case. You may have decided we needed expert evidence here. I'm just assuming that we did. The two support each other. But I want to—let me try to separate two points, Your Honor. Judge Rogers asked me about intermodals, and I never got to the second answer to her. The answer to you, Your Honor, is non-negotiability supports Rausser's model as to legacies. But, Judge Rogers, in answer to the intermodals, the lay evidence supports our model as to intermodals because the conspiracy involved coverage as well as rates. So my friends on the other side will say, oh, well, intermodals couldn't have had any class period antitrust injury because the formulas didn't change. Well, if you apply a rate to 5% of your volume and then you multiply it 10-20-fold in the amount of revenue it covers, the conspiracy to enforce, which is part of the conspiracy, this is not just a conspiracy to set prices. It is to enforce them without competition. That is where the evidence comes from. Let me go back to the question I was asking. Yes, Your Honor. One about the 2,000 for whom the Rausser model doesn't show injury or shows negative injury but doesn't show injury. So when the judge at 3034 to 3036 actually addresses that, the judge says a number of things, and maybe you can just tell me whether this is a legal error or a factual error. So he says on 3034, neither Dr. Rausser nor the plaintiffs explain how normal prediction error with respect to shippers with small or even a substantial portion, the 2,337 shippers that the model showed to be uninjured, nor do they try to quantify what group number or percentage of shippers are actually uninjured. Now, is that true or false as a fact matter? That we didn't quantify? Yes. Correct. It's true. Yes, but McClave, Rausser didn't, but McClave did. It says nor do Dr. Rausser or Dr. McClave try to quantify what number of shippers are actually uninjured. Is that false? Is Judge Wong, as a matter of fact? I don't want to use the word false. He's not, Your Honor, but negative damages and injury are two separate things. We think the key legal point is we should be entitled at trial to prove injury against anyone who might be injured. Nothing here says that they could not be injured. Okay. This point, though, is not an analysis of the claim, not analysis of how good the expert was or was not. It's just a flat statement by the judge that they didn't try to do these things, right? Yes. That sounds like not legal error. But factual error. Yeah. I'm sure, but you told us you weren't going to make any factual error. I'm not making any factual error arguments, so let me tell you what the legal error is. The legal error here is twofold. Number one, the judge created an arbitrary threshold for how many members, potentially uninjured class members is too many, 5 to 6% arbitrary. I think just to put some cards on the table, I don't think that's the issue here. I'm not asking the question that was left undecided by the Supreme Court. I'm not asking you the question whether a class can include some uninjured parties or whether money can go to them. I'm asking the question about the dominance, and the first question I want to ask is, is there evidence in the record of injury to the 2,000? The judge doesn't say that he's questioning your evidence, at least not in this section. He says there's no evidence. So as a hypothetical, if there were no common evidence that 2,000 members of the class were injured, would that not be a ground for deciding against Rule 23? No, Your Honor, because Rule 23b-3 wants individual issues to predominate, and the tail can't wag the dog. The lack of injury to a tiny, less than one-tenth of a member. Yeah, I understand. But there your argument is no longer that the judge made some terrible error about the difference between Rule 23 and Daubert. Now your evidence argument is he abused his discretion as to the question of which thing predominates. Is that right? Well, no, Your Honor, we think he applied the wrong legal standard, even as to the 2,000 shippers. That's what I'm trying to ask you. So in what way did he apply the wrong as to the 2,000 shippers? Because he said that any indication that 2,000 shippers might not be injured is enough to defeat class certification. No, he says in this section that there's no evidence that they were, not might, no evidence that they were injured. Correct, Your Honor, but here I have to back up a step. It comes from the legal error that he has isolated the expert evidence and is looking at it alone under a second reliability screen rather than the common evidence as a whole. And, Your Honor, that statement is incorrect if he had taken into account the rest of the evidence as a whole. So the legal error of not taking the lay evidence into account leads him to ignore the common evidence that everyone was injured by the universally enforced conspiracy. I understand the point about assessing the evidence in its entirety, but didn't this Court the last time around say that you need this model, and if you don't have a model that works, you don't have class certification? Your Honor, I don't. I think that that language in the decision truly expresses the holding. The holding was extremely specific, and the prior panel sent the case back to resolve the legacy shipper false positive issue, which we haven't discussed yet, on reliability grounds, not on persuasiveness grounds. And, in fact, the citation that this Court gave to the lower court in sending it back, and this is in the slip opinion at 13, was you sent it back to say, common questions of fact cannot predominate where there exists no reliable means of proving class-wide injury in fact, and you cited to the Eighth Circuit decision in Concord Boat, which was not a class action case, and it was a Daubert case. The word persuasive is nowhere in the prior opinion. We said Rule 23 requires a hard look at the soundness, that's the word from the opinion, of the statistical model. Absolutely right, Your Honor. And the 23B3 analysis requires a hard look at all of the evidence for commonality versus need for individualized trial. And my argument to you is that taking the common evidence together here and subjecting it to a 23B3 hard look does not mean that experts can come in on the other side and poke a bunch of holes in the weight of the expert evidence at the certification stage. If they want to do that, they have to wait for summary judgment and trial. Well, but why not? Because in Walmart, the relevant question was, is there a class-wide pattern of discrimination, right? And it was assumed they took as a given that that evidence would be admissible under Daubert, and they took as a given that it completely overlapped with the merits issue. Yes, Your Honor. And they held no certification because there wasn't significant proof, and proof is the court's own words, significant proof of a pattern of discrimination. Your Honor, we have proof of commonality. So we're the anti-Walmart. That was individualized discretionary decisions. This is uniform policy. So I'm not saying we don't have to have proof. What I'm saying is that we have to have proof that is capable of class-wide or common evidence such that a class action is superior to individualized trials. And that is so here because the very same evidence that we would use if we were suing individually, the models plus the admissions of the defendants who all said out of their own mouths in the class period, let's enforce uniformly these rate-based fuel surcharges, we have to come up with proof that's capable of class-wide treatment, but we don't have to come up with proof that is persuasive on the merits of antitrust injury. That's for later, and Walmart didn't say otherwise. Well, so let's try to isolate the Rule 50 standard, I'm sorry, the Rule 23 standard, independent of this weird business about what you call the second Daubert screen. Yes, Your Honor. So let's just focus on Rule 23. It can't be wrong as part of the hard look that Rule 23 requires to screen for reliability, correct? Correct. And it can't be wrong as part of a hard look, well, maybe you'll disagree with this, I don't know, but if a model makes some prediction that seems hard to explain or obviously wrong, is it a cognizable argument for the party resisting class certification to say that problem with the model is so grave that it's not significant proof for Walmart purposes of the commonality or predominance element? So, and the answer is it depends on what the weakness is. It's the same as my answer to Judge Rogers earlier. If the weakness in the model is that it doesn't explain as a common class-wide phenomenon where the antitrust injury came from, that is cognizable on Rule 23b3. Again, my counterfactual is if the model had been supported by lay evidence that showed wildly individualized bilateral negotiations to a price, never starting from the conspiratorial fuel surcharge, that kind of evidence might falsify the model for 23b3 purposes. But nothing here was of that nature. What happened here is that the weakness— Suppose the model predicted that people who made the purchases and paid the money prior to the class period suffered massively more damages than people who did so in the class period. Sure, Your Honor. Could the defendant come in and say, that's just crazy? And you can assess that on Rule 23. And my answer to that, Your Honor, is no, because that is a common defense. And that is all my friend Mr. Phillips really has here, is a common defense. We say the overcharges were caused by the conspiracy. Look, they were theoretical or under-enforced before. They're ubiquitous, uniformly enforced, and without discounts or waivers in the class period. We say conspiracy caused injury. And Mr. Phillips says, nah, it didn't necessarily cause it. It could just be interdependent, oligopolistic, parallel behavior. It could be consistent with the but-for world. That is a common defense, and we decide that at trial. If that's true, why do you concede, why do you take as a given that the Rule 23 inquiry, you don't quarrel with the district court screening for reliability to the extent that Daubert requires it. We're fine with that, and he admitted everything under Daubert. I mean, that's the district court assessing the evidence in a Rule 23 context, even where the Rule 23 issue overlaps with the merits. Your Honor, let me be clear on what I'm not arguing. I'm not arguing he can't peek at the merits, he can. I'm not arguing he can't screen for Daubert, he can. Here the district court let the expert report in under Daubert, and that should have been the only reliability screen for the expert. What I am saying to you is Rule 23b3 does impose a screen, but you've got to do several things. You've got to look at the expert evidence, not in isolation, but together with the lay evidence, which if there isn't enough lay evidence to show a conspiracy here, I'm not sure what case would show it, because we've got admissions out of the mouths of all four railroads that they engaged in common uniform practices of rate fuel surcharges. And what he can do in assessing that evidence is say, is there anything that falsifies commonality? He may not say— Let me pause. That's not the question we're asking about. It has to have commonality, not just as to whether a conspiracy exists. Is there words out of their mouths that say we have common practices that lead to antitrust injury? So, Your Honor, we have common practices, and we— Everybody, as far as I understand the other side, is not challenging the common evidence of the conspiracy. Right. The question is injury. Causation, Your Honor. Absolutely. No, look, we think—we stand by putting the common evidence of enforceability together with our model. What I want—the reason I'm stressing the common evidence about enforcement, the conspiracy was two parts. It was set the prices, don't compete on them, enforce them uniformly. The reason why I'm mentioning the common evidence about uniform enforcement is that is what is being attacked in our model. So, in other words, the causation, the defendant's argument is the conspiracy didn't cause the overcharges. Independent, parallel, oligopolistic behavior did. That is their defense. We say causation. They say no causation. That is a merits issue, and the district court should not have preemptively decided that under a persuasiveness screen that's manifest legal error. Your Honor, what—the reason I raise the evidence about commonality is that— But at the Rule 23 stage, they can say that you don't have a sufficiently sound— I'll just use sound to take a synonym for reliability. You don't have a sufficiently sound way of proving that through common evidence. Yes. The key is common. And the error the district court made here, the legal error, and I invite you to— The common evidence is your expert's model. Well, so, Your Honor, here's—the district court here admitted the expert's models under Daubert. He said they're reliable. They're sound methodology. They follow common econometric practices. Rausser was verified by McClave and Leitzinger. He lets it in. That's—the conclusion is at 2887 and 2892. The legal error, the manifest legal error, comes in when he says at age 30, 15, oh, well, no, under my second screen, I think, oh, for legacies, you didn't quantify the but-for waiver world and the class period waiver world. Or for intermodals, you didn't quantify the waivers in the but-for world and the waivers in the second world. That was where the legal error— And for the 2,000 uninjured? And the 2,000 uninjured, that was—the legal error there was he allowed—he mistook people who could not have been injured—people who might have been injured for people who could not have been injured. I think this is a useful distinction that you explored in the previous argument. Obviously, if there is somebody who a priori cannot be injured by anti-competitive conduct, that group of people, if they are sufficiently predominant, could shred the class. But if they are people who might be injured and we simply haven't proved it yet at class certification to the judge's satisfaction, but there's— You do agree you have to offer common evidence as to all of those 2,000, right? We did offer common evidence. That's the documentary evidence you talked about. That's the documentary evidence plus McClave. Remember, it's not disputed that most of the 2,000 are small shippers. The documentary evidence makes clear that small shippers with fewer shipments would be more vulnerable to coercive leverage from the conspiracy rather than less. And McClave actually quantified it in a part of his report that the judge ignored by saying that actually the small shippers in the 2,000 paid higher overcharges. That factual dispute should have gone to trial. It shouldn't have been a basis for denying class certification. And we agree with the district court's statement of this court's remand. You didn't say that every class member must be proved injured at certification. That would radically alter class action law and would be divergent from every other case that's ever decided the question before or after Tyson, and it would diverge from Tyson. Tyson allowed class action distribution to proceed even though there were hundreds of uninjured members in the class conceivably. So we agree that the fact—we shouldn't have to prove injury conclusively at class certification. The law is uniform on that. Tyson confirms it if there was any doubt. But we did provide common evidence that could have proved it if we were allowed to go to trial, and it could have been Colt versus McClave. Were the 2,000 uninjured or were they—and Colt himself admitted that just because there's negative damages doesn't mean there isn't injury, and that should be conclusive on why we should have been allowed to proceed. Questions? All right, you'll see, as I promised, you've got almost 25 extra minutes there. Thank you very much, Your Honor, and I hope you'll give me a little bit of time for rebuttal. Thank you. Now, Mr. Phillips, don't count on those 25 for you. So you discriminate, Your Honor. Good morning, Your Honors. May it please the Court. I have a hard time sort of listening to Ms. Sullivan's description of this case, both because it seems to me to fundamentally ignore the fact that this case was before this Court five years ago. The Court looked at exactly the same evidence of conspiracy, the same evidence of ubiquity, and everything else and said, that's not enough, flat out not enough. You've got to have a model. Was it the same evidence? I thought additional evidence was offered on that. Actually, to the extent there's been more evidence since you and I were here before, all of that evidence actually goes the other way and demonstrates that, in fact, there is no such thing as ubiquity. That if you look at pages 15, 16, 17 of our brief, what we demonstrate is exactly what my friend calls the counterfactual world. The factual world is that the vast majority of these arrangements are negotiated on a one-on-one basis, and there are lots and lots of discounts, huge percentages of discounts. Lots of people who have fuel surcharges prior to the class, lots of people who did them after the class, some who did, some who didn't. It's all over the lot on that score. The fact that there was evidence of a potential conspiracy, that part hasn't changed at all. But we didn't challenge that. I mean, there's a whole fight about whether 10706 allows all of that evidence to come in in any event on that point. But the bottom line from the prior decision of this Court is that's not enough to get you home. At the end of the day, you're going to have to show common evidence to prove all class members suffered some injury. Can you focus? Oh, I'm sorry. No, go ahead. Could we talk about what Ms. Sullivan describes as the overarching legal error here? So let's just assume, I think, that the Rule 23 inquiry encompasses a reliability component, and it encompasses other things as well. What is the legal support for the proposition that the reliability component of the Rule 23 inquiry is something more heightened than what you would apply in a Rule 702 context? That proposition seems to me very strange. Well, see, I think the problem, at least from my perspective, I guess I hate to sort of fight the premise of it, of the argument or the question, but I don't think that Judge Friedman did the reliability component of the Daubert analysis when he analyzed the issue on Daubert. What he said was, these are experts, they're using econometric methods, and they are analyzing a very large data pool in a way that experts do, and therefore I'm not knocking it out at that stage. He said, I'm going to take up the reliability issue as part of the Rule 23 analysis, because the question is, under Daubert, what is the expert evidence fit to achieve? And let me just quote from Judge Friedman's opinion. When he gets to the conclusion of the entire analysis on the legacy shippers, what does he say? The court therefore cannot find that Dr. Rausser's damages model reliably distinguishes overcharges due to the alleged conspiracy from competitively negotiated conduct. This flaw is fatal to the plaintiff's motion for class certification. So could he have analyzed reliability as a Daubert point in the first instance and knocked it out there? Sure, but he chose to do it this way. Yeah, it's a little confusing what he did, and he arguably truncated the Daubert analysis and folded it into Rule 50, but what he said I think is what I just said, which is that the reliability screen in the Rule 23 context is higher than the same screen in the 702 context. I think at the end of the day it shouldn't make any difference in this case, because at bottom right there are three fundamental flaws with the expert evidence, and all three shred the basis for class certification, regardless of what standard you want of reliability. I mean, you know, the reality is— If he's applying the correct Rule 23 standard. I think if he applies the correct Rule 23 standard or the correct Rule 703 standard. The point here is that if you have a model that cannot distinguish collusive behavior and the effects of collusive behavior from the effects of any other kind of behavior, then you have no basis upon which to say that there is class-wide injury of any sort. And this model fails on three different counts. It fails for the legacy shippers because the model proves— And this court said, well, move back. Maybe the problem with legacy shippers is the antitrust problems start sooner. We moved the analysis back. The damages for the legacy shippers go above 10% over charges as opposed to the 9.8% that you get for the class period. So there's no way to distinguish one from another on that basis. And the intermodal, the court says the intermodal doesn't change. Their theory is that there has to have been some massive waivers, that the evidence demonstrated categorically that waivers in the pre-class period were 2.9%, and that's not a part of collusion, and there's no reason in the world why somebody who has a contract that says I'm allowed to increase prices to reflect fuel increase prices would waive those categorically as those prices are going up and up and up. And so the court said, there again, that shreds the basis for class certification. But I thought there was evidence about pre-class period that contradicts what you just said. I don't think so. It doesn't mean you have a contract. It doesn't mean it was enforced. It doesn't mean it wasn't modified. It doesn't mean, you know, not— Actually, I think the evidence actually went the other way, which was when their experts said, you know, my explanation for how you end up in this situation is because there should have been massive waivers. The answer to that is all we know— what we know from the pre-class period is that they waived about 2.9% of the time, and there is no evidence, and the judge said specifically, no evidence that there would be widespread waivers in the class period. And candidly, whether or not individual shippers and the railroads are going to engage in negotiations that lead to either discounting or waiving is inherently an individualized determination. You can't undo the problem of not having a class-wide proof of injury by saying, well, we'll substitute now in individualized negotiations between the parties to see whether there was a waiver. They don't have a theory of waiver. Ms. Solden also talks about a theory of coverage. The problem there, again, Rausser specifically disavowed having any model to test coverage. He said, I didn't do it, I didn't try to do it, don't know if I could do it. And so the notion that somehow you're going to be able to prove wider coverage in one stroke, as Walmart requires, is impossible. You're going to have to look at every individual case. So wouldn't then one stroke, if you're correct, wouldn't that cause them to lose that summary judgment? No. That is, if they present an argument, the only evidence they have across the class is something that you think is unreliable or passes reliability but is debatable or whatever. And why isn't that the end of it? Or at that point, or even in front of a jury, why isn't that the end of it? If that's their only evidence, then in one stroke you eliminate their case. Well, I think you're putting the cart before the horse in that context because— I'm not sure of the metaphor, but okay. Because the question here is, should this be tried as an aggregate undertaking in the first instance, not what do you do if it is being tried? Oh, that's summary judgment then. If the fact is it turns out they have no evidence other than this, why is this like— But that's the reason why this is not the death knell of this litigation, both Judge Cassis and Judge Garland. Let's assume for the moment we're here, so leave the death knell issue out. No, no, I get that, but I'm not trying to fight the 23F point. I'm just trying to explain what would happen if the court says there's no class. So now you go back, you have individualized claims worth tens of millions of dollars. They're going to bring that action. They're not going to rely on browser. Nobody in individual antitrust cases relies on class-based evidence because it's irrelevant to the individual claims. What are they going to claim? They're going to claim we put in our bid to get our goods shipped, and the prices went way up, and we tried to negotiate. You're saying if they're tried individually. Right. What if they're tried as a class? At the end of the day, yes, I think— What if it's certified at once and went forward? In a single stroke, wouldn't you win the case? We would win the case under those circumstances. I believe that's true. All right, so isn't that sort of what the court has said in Tyson and Amgen and other cases, where a single stroke would eliminate the only evidence that is— No, because— The question is whether it is or isn't, and where it is or isn't, it can be certified as a class. No, Judge Garland, it's the flip side of that problem, because in Tyson, the only evidence each plaintiff had or could bring forward was the representative evidence because there was no documentation. That's the problem in the case. Every one of these plaintiffs has evidence to prove whatever it is that company wants to prove, different from, and it does not need in any way, and, candidly, would never use Rausser's model in any way to try to prove anything in connection with this, because it doesn't tell you anything about any of those individual claims. And so you're back to the fundamental question is, what is the argument for aggregating this litigation when in the face of Walmart and Comcast, the Supreme Court has said categorically, it should be the exception. It should not be the rule. It is their burden to demonstrate that this model will reliably prove injury on a class-wide basis. That is precisely what this panel said. I don't know what, and I think Judge Rogers asked this question, what could Judge Friedman have done differently than he did, other than I think he could have probably dispensed with the first 150 pages of the opinion and just finished it off on the last 50, in which he identified the fatal flaw in the model as it was presented and why that precludes. Could you do me a favor and look at the 2,000 uninjured question? So opposing counsel said there are two additional forms of evidence, non-expert, well, I guess McClave is an expert, but documentary, non-model evidence. One was uniform evidence that they were not able to discount, and the number two, McClave's evidence of a pattern of overcharges. What do you say about those as to whether they will? Well, the first one still doesn't get you anywhere because, again, I mean there's a huge dispute about this pattern of overcharges and whether or not there were negotiations, and candidly the evidence is absolutely undeniable that there are negotiations, there are discounts, the base rates. Is that a completely merits question or is that a 23? No, it goes to the, because you have to figure out what are you going to do with those 2,000 people and how are you going to prove what to do with those 2,000 companies. And the answer is you're going to have to look at every single one of them to figure out whether or not they got a discount or didn't get a discount, asked for a discount, didn't ask for a discount, or to explain how is it possible that for every single shipment they had, they ended up with their shipment being for a price that was lower than what you would have expected in their world. The report that opposing counsel was referring to as uniform evidence, was that a statement by an expert or a general summary witness or was that a collection of evidence, individualized evidence, with respect to all the 2,000? Well, what McClave did was he came in and he sort of lumped various elements of the 2,000 into different categories and said shippers and small shippers and large shippers, et cetera. But at the end of the day, those categories don't cover everybody in a uniform way. And so whether it's a big shipper, because there are a lot of big shippers who obviously can negotiate pretty aggressively, who are in this category. There are a lot of big shippers who can negotiate aggressively, who are in a different category. There's no uniformity with respect to how any of those individuals were taken care of. And there is no way for McClave to undo the need for individuality. And there is certainly no way to make a conclusion that Judge Friedman abused his discretion by saying the only way I can figure out what to do with those 2,000 separate matters at a minimum, and I should be clear about that. Remember, they get to 2,000 on the basis of prediction error. Prediction error goes two ways. So they're just as likely to have 2,000 people for whom they claim to have some damages who are, in fact, not injured. And again, no way to know how to discern that without actually having a trial. So McClave explained his groups and why he did it that way. So my question is we've had class actions before that this court has affirmed the certification, and then the case has gone forward, and then at the end of the trial, where the plaintiffs have prevailed on some counts, the district court has set up a separate procedure for allocating damages. And at that point, the individuals come forward and say, I've got the proof of my injury. Aren't you trying to lump those two together? When at the certification stage, we're really at the former. McClave has offered an explanation. You haven't attacked it in terms of it's not a scientifically, you know, it's not a Daubert problem, it's not a 702 problem. You're saying it's a common evidence problem. So where you have commonality as to some features here, as McClave suggested, why isn't what you're arguing really another stage of the proceeding? Because, Judge Rogers, the evidence that McClave put forward is designed to try to undo what is already, to my mind, a fatal flaw in the way the model that Rauscher put forward failed to satisfy the obligations of the plaintiffs in this case. That's how you get the 2,000 shippers who appear to have absolutely no injury or no proof of injury, notwithstanding the claim that they have been injured. So you now know you've got a flawed model. And then McClave is trying to backfill to get you some way to get out of that box by saying, well, if you mix and match and shift around and do this with the shippers, the problem's not as bad as it appears to be. And on this score, Judge Friedman looked at the McClave evidence, and he looked at the plaintiff's evidence, and he made a finding specifically that that evidence is not going to be able to get you to a class-wide proof of injury. That is going to require, at a minimum, 2,000 individualized proceedings. And I submit to you that that's not an abusive discretion. You're not talking about the amount of individual injury. You're talking about whether there was class-wide injury in fact. Injury in fact. That's correct, Your Honor. That's the fundamental point. I say I don't know what more you could ask Judge Friedman to have done under these circumstances. If there are no further questions, I hope you don't give Ms. Sullivan too many more hours. Thank you. We let you go one minute and 57 seconds. I appreciate it. I feel much better. Did anybody else have any questions? You're way over, but you need two extra minutes because he didn't take all the extra time he could have. Thank you very much, Chief Judge Garland. Five points. One point. You don't need 2,000 trials. The 2,000 supposed negative damages folks are going to prove their case with the same class-wide evidence. And, Judge Rogers, you're exactly right. Take them out later if they don't prove damages. Let McClave and Colt duke it out. Don't decertify the class. That would give new meaning to the tail wagging the dog. Point two. My friend said there's discounting galore. No discounting. Judge Friedman found, and I refer you to 287 federal rules decisions at 5960. And remember, he says in this case, this round, the documentary evidence hasn't changed. He said no discounting, and they always start from the conspiratorial rate. He found no credibility whatsoever in the defendant's suggestions of discounting. Point three. My friend says, oh, well, there were only 2.9 percent waivers in the pre-class period and less waivers in the class period. Waivers are irrelevant. There was evidence of non-enforcement and programmatic reductions rather than individual waivers. I'd refer you to the citations in our brief to the BNSF memo that says, this is at record, page 435 and 475. We were programmatically reducing our 5 percent rates to 2 or 3 percent on the eve of the class period. And you heard the other railroad saying the fuel surcharges are melting away. Waivers are a red herring because programmatic reductions happened in pre-class period, didn't happen after coverage. My friend, fourth, my friend says coverage. Why didn't he do a coverage model? And Judge Rogers, the key point about the intramodals is even if the formulas stay the same, you're spreading the fuel surcharge formulas to a vastly greater number of shippers and shipments. That's why the conspiracy is causal. And the coverage point, I refer you to A2976 where the judge said he didn't need a coverage model. I'm persuaded. You don't need to build a model on top of a model. Fifth and last, I want to address your point about McClave, Your Honor, because he came up a lot. I want to be clear that McClave relied on Rausser's model, so he did take into account the common factors, and he just added a customer ingredient. So the McClave model does go to antitrust injury, not just to conspiracy. And finally, I just want to say there is common documentary evidence more broadly beyond McClave of antitrust injury as well as conspiracy, because, Chief Judge Garland, you were very right to ask me that, and I want to be very clear. I'm not just citing uniformity and non-negotiability for common evidence of conspiracy. I'm citing it for the purpose that it helps to show antitrust injury, that the collusion was causal. And I think that my friend, Mr. Phillips, has only said exactly as you suggested, that he doesn't think the evidence shows that collusion was causal. He thinks there was other causation. That's not a commonality problem. That's a merits problem. It should never have been decided at class certification, and you should reverse and direct certification of the class. If there are no further questions, thank you very much. Thank you. I'll take the matter under submission. Thank you. Stand, please.
judges: Garland, Rogers, Katsas